ARBUCKLE et al. v. BLACKBURN, Dairy and Food Com'r of Ohio.

(Circuit Court of Appeals. Sixth Circuit. January 7, 1902.)

No. 973.

1. EQUITY JURISDICTION—ENJOINING CRIMINAL PROSECUTIONS.

A court of equity is without jurisdiction to entertain a bill by which it is. sought to have it determine the question whether the complainant has been guilty of the violation of a criminal or penal statute, and, if it is found that the statute has not been violated, to enjoin threatened prosecutions thereunder; nor is such jurisdiction given by the fact that the prosecutions, though unsuccessful, will injuriously affect complainant's property rights.

2. JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.

A suit against an officer of a state, to enjoin him from instituting prosecutions under a statute of the state which is conceded to be valid if properly construed, and with the enforcement of which he is

charged by law, on the ground that he is proceeding under an erroneous construction of the law, which would render it invalid as in violation of the constitution of the United States, is one, in effect, against the state, of which a federal court is denied jurisdiction by the eleventh constitutional amendment.[1]

**3.** PURE-FOOD LAWS—CONSTITUTIONALITY—POLICE POWERS OF STATE.

The pure-food law of Ohio (2 Bates' Ann. St. §§ 4200-4 to 4200-8) which makes it an offense to manufacture for sale, sell, or offer to sell, within the state, any article of food or drink which is adulterated, within the meaning of the act, and provides that food shall be deemed to be adulterated, among other things, "if it is colored, coated, polished or powdered, whereby damage or inferiority is concealed, or if, by any means, it is made to appear better or of greater value than it really is," but that the act shall not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food, "if each and every article sold or offered for sale be distinctly labeled as a mixture or compound, with the name and per cent. of each ingredient therein, and are not injurious to health," is one which it is within the police powers of the state to pass and enforce, and is not unconstitutional, as an interference with the right of congress to regulate interstate commerce, as applied to articles, mixtures, or compounds brought into Ohio from other states, and sold in the original packages.

**4.** SAME.

A law of a state, intended to prevent the sale of adulterated food products, which is constitutional and valid in its language and purpose, is not rendered unconstitutional, so as to authorize a federal court to entertain a suit to enjoin prosecutions thereunder, because the state food commissioner, charged with the duty of enforcing it by instituting criminal prosecutions against those who, in his judgment, have been guilty of violating its provisions, may give it an erroneous construction.

**5.** INJUNCTION—GROUNDS—THREATS OF PROSECUTION BY PUBLIC OFFICER.

It is not ground for an injunction that a state food commissioner, charged by law with the duty of determining such matter in the first instance, is publishing statements that an article of food or drink made by complainant is adulterated, and its sale is in violation of the laws of the state, and threatening prosecutions against those who sell it, whether such statements are correct or erroneous.

**6.** PURE-FOOD LAWS—OPERATION—ARTICLES MADE BY PATENTED PROCESS.

That an article of food or drink is prepared by a process which is or has been protected by letters patent of the United States does not prevent it from coming within the operation of laws passed by a state in the exercise of its police powers.

**7.** INJUNCTION—CRIMINAL PROSECUTIONS.

The fact that a food product, the sale of which is claimed to be in violation of the laws of a state, is widely sold therein, and that many persons may be subject to prosecution, does not give a court of equity jurisdiction to enjoin such prosecutions.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This case was brought by Arbuckle Bros. to restrain Joseph E. Blackburn, dairy and food commissioner of Ohio, from prosecuting the vendors of Ariosa, an article sold by the complainants to many dealers in Ohio, because of alleged violation of pure-food laws of the state. The substance of the bill and an amendment thereof is as follows:

The general assembly of the state of Ohio passed in the year 1884 an act entitled "An act to provide against the adulteration of food and drugs" (81 Ohio Laws, p. 67), the substance of which is recited. For more than thirty years the complainants and their predecessors had been engaged,

---

[1] Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.

and still are engaged, in the manufacture and sale throughout the United States, including the state of Ohio, of a certain compound or mixture known as "Ariosa," composed of roasted coffee, compounded and mixed with eggs and sugar, packed in sealed packages, ready for use by the consumer. In order to preserve said product from deterioration, and to retain the original strength and aroma in the coffee, the complainant Arbuckle more than 30 years ago invented, and thereafter patented, adopted, and used, and complainants still use, a certain process whereby the compound or mixture known as "Ariosa" was, and still is, mixed and compounded, and the separate beans thereof coated, and to a large extent hermetically sealed, after roasting, with a compound of sugar and eggs, at first in composition with a quantity of Irish moss, also a wholesome article of food, and for 20 years without such Irish moss. That said letters patent were issued in the year 1868, and, after the expiration of the said patent, trade therein was greatly increased, and still continues to increase, by reason of the increased sale and reputation of said Ariosa. That the good will of said business of making and vending said Ariosa has become, and now is, wholly dependent upon the reputation and sale of Ariosa, and the good will aforesaid. That for many years the complainants, at great expense, widely advertised the use of the aforesaid process, that the purchasers might be informed of the good qualities of coffee so mixed, compounded, and coated. That for many years prior to 1894 every package of Ariosa was labeled in conspicuous type in the words and figures following:

"Ariosa is a compound made from coffee, sugar, and eggs. The coffees are selected especially for their strength, flavor, and superior drinking qualities, are pure,. sound coffees, and absolutely free from all the poisonous coloring substances which are now so largely used to improve the appearance of coffee. Coffee, when roasted, is porous, and, unless prevented, loses its best qualities, and absorbs others which are inferior to it. By our process of hermetically sealing the pores of roasted coffee, we secure a threefold object: (1) The retention of the full strength and aroma for any length of time; (2) the prevention, through absorption, of any injurious flavors; (3) the saving to the consumer of the additional expense of eggs incurred when any other coffee is used. Ariosa is self-settling. Choice eggs and pure granulated sugar are the only articles used in hermetically sealing Arbuckle's Ariosa Coffee.

"Formula.

Coffee .................................................................. 99278
Eggs ..................................................................... 00361
Sugar .................................................................... 00361

"Four pounds roasted coffee go as far as five pounds green, as coffee loses 20 per cent. in roasting."

That being advised of the character of the preparation known as "Ariosa," and as a result of experience in the use thereof, great numbers of people have preferred and do prefer the use of Ariosa to other brands, mixtures, or compounds of coffee so treated, and the same is sold and purchased in large quantities throughout the United States, and has been so sold and purchased for more than 30 years last past. That the extent and profit of the complainants' business depends upon the good will thereof, and the confidence of consumers that, so long as the same is manufactured and sold by the complainants, it shall be identical in quality and composition with that which, under the same brand and appearance, consumers have theretofore purchased. Certain inferior compounds and mixtures are described and sold in competition with the said Ariosa; said compounds and mixtures being so treated as to conceal defects, or misrepresent the real condition thereof, so as to retain water which would otherwise be eliminated from the coffee in process of roasting, so treated as to increase the weight of roasted coffee, while decreasing its worth for use; mixed and compounded with unhealthful ingredients; none of which processes or methods are used by the complainants, but the process adopted by them is for the purpose of retaining in the coffee the full strength and aroma thereof; preventing the absorption of any injurious or noxious gases or flavors; settling the same when pre-

pared for use. There is nothing in said process which conceals damage or inferiority in coffee, or makes it appear better or of greater value than it really is. On the contrary, the coffee used in said compound or mixture is of a good quality and undamaged. The articles of food used in the coating thereof are in themselves pure, wholesome, and healthful. Said coating is colorless and transparent. Said process was adopted and used, and still is used, at great expense, for the benefit of the consumer. Complainants have on hand at various points throughout the United States large stocks of the compound and mixture known as "Ariosa,"—in Ohio, about 1,000,000 pounds, more or less, of the value of $100,000; in the United States, 10,000,-000 pounds, more or less, of the value of about $1,000,000. Complainants have a large number of agents in Ohio and elsewhere engaged in the sale of Ariosa, and a great number of dealers, to wit, more than 10,000, in Ohio, have in their possession large quantities of Ariosa for sale, and will continue to sell the same in preference to other brands of coffee not similarly prepared, to the profit of complainants, and the increase of their aforesaid business, and of the good will thereof.

The respondent herein, Joseph E. Blackburn, dairy and food commissioner as aforesaid, without authority of law, and falsely and erroneously construing the provisions of said statutes above set forth, notwithstanding the fact that the process used in the manufacture of the said compound or mixture known as "Ariosa" is not in violation of the said statute, and that the said statute is not applicable to the premises, and that there is no law of the state of Ohio warranting his acts, and notwithstanding the healthful character of said Ariosa, and that the same is composed of healthful ingredients, each package plainly marked as aforesaid, personally and through his agents has heretofore, and does now, and will, unless restrained by the order of the court, continue to, widely advertise throughout the state that said process used in the manufacture of Ariosa is within the prohibition of, and in violation of, the aforesaid statute. Said Blackburn falsely claims and pretends that the sixth clause of said statute wholly forbids the glazing of the coffee used in the manufacture of Ariosa. Yet in fact said process does not conceal damage or inferiority, or make said coffee appear to be better or of greater value than it really is. That said coating is for the uses and purposes above set forth, and is not used to affect or change the appearance of said coffee; any change in the appearance thereof due to said glazing being incidental and immaterial in the use thereof, and not such as to assimilate said coffee in appearance to other or better grades. Respondent has menaced and threatened with prosecution, and still menaces and threatens to prosecute, dealers in and vendors of Ariosa in the state of Ohio, for a violation of the aforesaid statute, and will, unless restrained by the order of the court, institute a large number of prosecutions upon the wrongful and erroneous charge that the treatment of said Ariosa by the process aforesaid is a violation of the statute aforesaid, and that the same is an adulterated food product, within the said statute. That by reason of the official capacity of the respondent, and the fact that he claims to act under said statute intended to prevent the adulteration of food products, said respondent's statements and threats of prosecution have led and do lead and will hereafter continue to lead dealers in and consumers of said Ariosa throughout the United States, and more particularly in Ohio, to doubt the healthful character and proper preparation of the same, and will deter wholesale and retail dealers and consumers from purchasing, vending, or using the same, greatly decreasing the repute and sale thereof, to the great and irreparable damage of complainants.

That on or about the 5th day of February, 1901, said respondent issued a certain circular to dealers and vendors of Ariosa within the state of Ohio, of which the following is a copy:

"State of Ohio.

"Office of Dairy and Food Commissioner.

"Dear Sirs: Replying to your inquiry about the coffee situation, would say that this matter is now under consideration and investigation by the chemists of this department. As soon as conclusions are reached, a circu-

lar notice will be sent to all the jobbers in Ohio, and a sufficient number will be furnished to supply all their salesmen. I might say that the following firms have agreed to accept the law as construed by this department: Andrus, Scofield & Co., Columbus; Dayton Spice Mills, Dayton; Woolson Spice Company, Toledo. W. F. McLaughlin & Co., of Chicago, have agreed to comply with the laws as soon as construed by the court. The only firm that has refused and still refuses to accept the ruling of this department, or abide by the laws of the state as construed by our supreme court, is Arbuckle Bros., of New York.

"Very truly yours,      J. E. Blackburn,

"Dairy and Food Commissioner.

"Columbus, Ohio, February 5, 1901."

Said circular letter is wholly false, in this, to wit: That complainants have not at any time refused to accept the construction of the law of Ohio as construed by the supreme court of the state; and the complainants are informed and believe that the Woolson Spice Company has not agreed to accept the said law as construed by respondent, but, on the contrary, refused, and still refuses, to accept said construction of said law, and still continues to sell coffee prepared and glazed by the processes used by it. That said circular was sent generally to jobbers and dealers in food products in the state of Ohio. That few, if any, of them had inquired of the respondent as therein stated, but said circular was sent to dealers without any such inquiry. That said circular, by falsely and wrongfully singling out complainants as alone refusing to accept the ruling of respondent to abide by the laws of Ohio as construed by the supreme court thereof, necessarily implied that, of the food products manufactured and sold by manufacturers, those made by complainants (particularly the product Ariosa) alone fell short of the standard of purity imposed by said statute; thus wrongfully and falsely implying that Ariosa is inferior in quality, grade, purity, and wholesomeness to the products of other manufacturers, whereas the standard of said Ariosa in the respects stated is at least as high as that of any like product manufactured and sold by like manufacturers. And, unless restrained by order of court, said respondent will issue other and further circulars to dealers of food products in Ohio, in large quantities, cause the same to be widely published and distributed throughout the state and elsewhere, and said subsequent circulars will be directed against the complainants alone, with intent, purpose, and effect of discriminating against complainants and their said product, and to the irreparable injury of the sale thereof, and the trade of complainants, and the good will of their business. By said circular the respondent threatens to accuse complainants and dealers in Ohio in complainants' product of a crime, and to do an injury to the property of complainants, with intent to compel complainants and the dealers in said product to cease from selling and offering for sale the same within the state of Ohio. Such prosecution is threatened by said respondent under his false and erroneous construction of said statute, is without authority of law, and will deprive complainants of their property, of the value of the product already manufactured, and the trade and good will of their business of vending said product within the state of Ohio, without due process of law. That said acts and the menaces and threats have worked, and will continue to work, irreparable injury to the property rights of complainants, and if respondent be permitted to institute or conduct proceedings or prosecutions against the vendors of said product, or be permitted to institute or conduct proceedings or prosecutions against them, will work further irreparable injury to said property rights. Said statute, construed as respondent claims it should be, is in conflict with the fourteenth amendment to the constitution of the United States, in that it would deprive complainants of their property, by prohibiting them from selling in Ohio, and dealers in and vendors of food products from purchasing from the complainants, pure food products which are not injurious to health, and will destroy the value of said product as an article of commerce, by prohibiting the sale thereof in the state of Ohio, and would deprive complainants of the just and lawful benefits accruing to them by reason of their property rights in said food product, and largely destroy the mar-

ket value of existing stocks of Ariosa in possession of complainants in Ohio and elsewhere, and will deny to complainants and to dealers in said product in the jurisdiction of the state of Ohio the equal protection of the law. Ariosa is manufactured and treated according to the aforesaid process at complainants' factories in New York and Pennsylvania, and not in Ohio. After being so manufactured and treated, it is at said factory packed in said packages, and in said original packages shipped by complainants to Ohio, and sold in said original packages; and said statute, if construed as respondent claims it should be, is a regulation by the state of Ohio of interstate commerce, and is therefore repugnant to and in violation of the third clause of section 8 of article 1 of the constitution of the United States. Owing to the large number of dealers in Ariosa in Ohio who will be prosecuted if said respondent be permitted to carry out his said threats and menaces, a multiplicity of suits will arise, and thereby complainants' property rights will be determined in litigation to which complainants will not be, and could not be, parties. The interests of such dealers are in many cases not in common with, nor representative of, the interests of complainants. Therefore they are in great and imminent danger that in many such suits and prosecutions no defense will be made, either through lack of interest, or in wrongful collusion and conspiracy with respondent, to the great and lasting injury and prejudice of complainants for which they have no adequate remedy at law. Although such prosecutions shall uniformly result in the acquittal of the person charged, yet, by reason of the multiplicity thereof, said prosecutions will result in deterring many, if not all, dealers in food products in Ohio from dealing in Ariosa.

The bill prays relief as follows: "(1) From stating or charging that complainants' said food product, Ariosa, being a compound of pure, roasted coffee, mixed, treated, coated, and glazed with a preparation of sugar and eggs according to the formula and by the process hereinbefore set forth, is an article of food adulterated within the meaning of said statute, and that the use of complainants' said process of coating and glazing the coffee, constituting the chief ingredient of Ariosa, with a preparation of sugar and eggs, as hereinbefore more particularly described, constitutes a violation of said statute, and that the importation of said Ariosa into Ohio, or the selling of, or offering for sale the same, constitutes a violation of said statute; (2) from charging the complainants herein, or any of them, or said firm of Arbuckle Bros., or any dealers in Ariosa, with violating said statute by selling or offering for sale Ariosa, or with adulterating food, in violation of said statute, by reason of the aforesaid treatment and coating of the coffee forming an ingredient of Ariosa with a preparation aforesaid; (3) from charging the complainants, or any of them, or said firm of Arbuckle Bros., with violating the said statute by adopting and using said process of coating above described, or by selling or offering for sale Ariosa so glazed; (4) from charging any dealer in Ariosa with the possession, offering for sale, or sale of an adulterated food product, within the meaning of said statute, in having in their possession, offering for sale, or selling Ariosa so glazed; (5) from menacing and threatening any dealer in Ariosa so glazed with prosecution for having in his possession, offering for sale, or selling such Ariosa; (6) from instituting or commencing against any person, partnership, or corporation having in his, their, or its possession, offering for sale, or selling, Ariosa, any action, suit, proceeding, or prosecution based upon the treatment and coating of the coffee forming an ingredient of said Ariosa with a preparation of sugar and eggs, according to the formula and by the process more particularly above described; and (7) that your orator may have such further relief as to the court shall seem equitable and proper in the premises."

The complainants filed an amendment to the bill as follows: "(20) The wrongful acts which said respondent threatens to do, and, unless restrained, will do, as in complainants' said bill of complaint alleged, will make unmarketable in Ohio, and to a very large extent impair and destroy the market value of, the large stocks of Ariosa which complainants now have on hand in Ohio, and will, to a large extent, deprive them of their said business, and the good will thereof, in Ohio, and greatly injure, if not wholly destroy, the value of the same, and enable complainants' competitors, selling in Ohio

coffees treated by processes similar to, but not identical with, complainants' said process, to obtain complainants' said business, which can only be regained after long time and at great expense; and complainants will be put to other great expense in defending their said property rights in Ohio. And if, pending the final determination of this cause, said respondent shall be permitted to commit the threatened wrongs, the same will, as complainants are informed and believe, damage complainants to the extent of more than one hundred thousand dollars,—an amount largely in excess of respondent's ability to respond in judgment,—and thereby complainants will suffer irreparable injury unless a preliminary injunction shall be granted herein."

John De Witt Warner and Clarence Brown, for appellants.

Walter F. Brown and E. B. Dillon, for appellee.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

DAY, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

As the circuit court dismissed the bill, it is unnecessary to consider the testimony offered in support of the application for a temporary injunction. The matter to be reviewed is the sufficiency of the bill and amendment to warrant the intervention of a court of equity to restrain the defendant as prayed. An analysis of the bill shows the claim to be that respondent, the dairy and food commissioner of the state of Ohio, is proceeding, upon an alleged false and erroneous construction of the statutes of Ohio, to prosecute persons in Ohio dealing in the complainants' product known as "Ariosa," and is giving out the statement that this product is sold in violation of the laws of the state. The act passed March 20, 1884 (2 Bates' Ann. St. Ohio, §§ 4200-4 to 4200-8), provides against the adulteration of foods and drugs, makes it an offense within said state to manufacture for sale, offer for sale, or sell any article of food which is adulterated, within the meaning of the act; and the term "food," used therein, includes all articles used as food or drink by man, whether simple, mixed, or compound. It is further provided in the act that food shall be deemed to be adulterated, among other things, "if it is colored, coated, polished or powdered, whereby damage or inferiority is concealed, or if, by any means, it is made to appear better or of greater value than it really is." It appears that the coffee of the complainants is coated, after roasting, with a compound of sugar and eggs, for the purpose, as alleged in the bill, of retaining the full strength of the coffee, "preventing the absorption of any injurious or noxious gases or flavors, and settling the same when prepared for consumption"; thus bringing Ariosa within the terms of the Ohio law, which provides that the act shall not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food "if each and every article sold or offered for sale be distinctly labeled as a mixture or compound with the name and per cent. of each ingredient therein, and are not injurious to health." It is claimed that notwithstanding Ariosa is thus labeled with a statement of the elements of the compound, and is not injurious to health, the food commissioner is threatening proceedings, and is claiming that the same is within the prohibition of the sixth clause of the statute above quoted, making it an offense to coat an article of food, whereby damage or inferiority is concealed, and the same made to appear better

or of greater value than it really is. It is urged that this statute, "construed as respondent claims it should be," is in conflict with the fourteenth amendment of the constitution, as it deprives the complainants of their property, by prohibiting them from selling it in Ohio, and dealers from selling the same in that state, notwithstanding the same are ordinary articles of food and not injurious to health, and will destroy the market value of the product, and deny to the complainants within the jurisdiction of Ohio the equal protection of the laws. The argument is that conceding, for this purpose, that the statute is constitutional when properly construed and enforced, the respondent's wrongful construction thereof results in an infraction of the constitutional rights of the complainants. This alleged wrong construction, when analyzed, amounts to this: The complainants claim that their compound is not within the terms of the statute. The food commissioner wrongfully claims that it is. Upon this branch of the case the question is, may a court of equity entertain a bill to inquire into this matter, and, if it finds that the complainant is right in its contention, enjoin the food commissioner from instituting proceedings under the laws of Ohio? The jurisdiction of courts of equity has never been carried to this extent in authoritative decisions. On the contrary, the supreme court, in more than one instance, has denied such jurisdiction to a court of equity. The rule is thus stated by Mr. Justice Gray in Re Sawyer, 124 U. S. 200-211, 8 Sup. Ct. 482, 488, 31 L. Ed. 402, 406:

"The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there. Attorney General v. Cleaver, 18 Ves. 211, 220; Turner v. Turner, 15 Jur. 218; Saull v. Browne, 10 Ch. App. 64; Kerr v. Corporation of Preston, 6 Ch. Div. 463. Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine. Story, Eq. Jur. § 893. And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under the statutes of the state or under municipal ordinances. West v. Mayor, etc., 10 Paige, 539; Davis v. Society, 75 N. Y. 362; Tyler v. Hamersley, 44 Conn. 419, 422, 26 Am. Rep. 479; Stuart v. Board, 83 Ill. 341, 25 Am. Rep. 397; Devron v. First Municipality, 4 La. Ann. 11; Levy v. City of Shreveport, 27 La. Ann. 620; Moses v. Mayor, etc., 52 Ala. 198; Gault v. Wallis, 53 Ga. 675; Phillips v. Mayor, etc., 61 Ga. 386; Cohen v. Commissioners, 77 N. C. 2; Waters-Peirce Oil Co. v. City of Little Rock, 39 Ark. 412; Spink v. Francis (C. C.) 19 Fed. 670, and 20 Fed. 567; Suess v. Noble (C. C.) 31 Fed. 855."

In the later case of Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399, the same rule is recognized and enforced. Mr. Justice Shiras, at page 169, 172 U. S., page 127, 19 Sup. Ct., and page 399, 43 L. Ed., speaking for the court, says:

"No case can be found where an injunction against a state officer has been upheld where it was conceded that such officer was proceeding under a valid state statute. In the present case the commonwealth's attorney, in the prosecution of an indictment found under a law admittedly valid, represented the state of Virginia; and the injunctions were therefore, in substance injunctions against the state. In proceeding by indictment to enforce a criminal statute, the state can only act by officers or attorneys, and to enjoin the latter is to enjoin the state. As was said in Re Ayers, 123 U.

S. 443, 497, 8 Sup. Ct. 179, 31 L. Ed. 216: 'How else can the state be forbidden by judicial process to bring actions in its name, except by constraining the conduct of its officers, its attorneys, and its agents? And if all such officers, attorneys, and agents are personally subjected to the process of the court, so as to forbid their acting in its behalf, how can it be said that the state itself is not subjected to the jurisdiction of the court, as an actual and real defendant?'"

Upon the authority of this case and others decided in the supreme court, it seems clear that this action cannot be maintained consistently with the eleventh amendment to the constitution, withholding the judicial power of the United States from suits in law or equity commenced or prosecuted against one of the United States by citizens of another state, or citizens or subjects of any foreign state. In Poindexter v. Greenhow, 114 U. S. 270–287, 5 Sup. Ct. 903, 29 L. Ed. 185, quoted with approval in Re Ayers, supra, it was said "that the question whether a suit is within the prohibition of the eleventh amendment is not always determined by reference to the nominal parties to the record." In the Ayers Case the suit for injunction, which the court held could not be entertained, was brought against the attorney general and treasurers of counties, cities, and towns in Virginia, just as the present case is brought against Joseph E. Blackburn, dairy and food commissioner of Ohio. The injunction sought is against the prosecution of suits in the Ohio courts which are about to be instituted by Blackburn, not in his individual capacity, but as an officer of the state. By the terms of the statute the dairy and food commissioner is an officer of the state expressly charged with the enforcement of all laws against frauds and adulterations or impurities in foods, drink, or drugs, and unlawful labeling in the state of Ohio. It is made his duty by statute to prosecute, or cause to be prosecuted, any person or persons, firm or firms, corporation or corporations, engaged in the manufacture or sale of any adulterated article or articles of food or drink, or adulterated in violation of or contrary to any laws of the state of Ohio. 1 Bates' Ann. St. Ohio, §§ 409–7, 409–8. It is also provided that food so coated as to conceal damage or inferiority shall be deemed to be adulterated. Paragraph 6 of section 4200-6, 2 Bates' Ann. St. Ohio. What, then, is the object of the injunction sought in this case? It is no more or less than to restrain the officer of the state from bringing prosecutions for violations of an act which such officer is expressly charged to enforce in the only way he is authorized to proceed,—by bringing criminal prosecutions in the name of the state. This is virtually to enjoin the state from proceeding through its duly qualified and acting officers. If the food commissioner may be enjoined from instituting such prosecutions, why may not the prosecuting attorney, or any officer of the state charged with the execution of the criminal laws of the state? While the state may not be sued, if the bill can be sustained against its officers it is as effectually prevented from proceeding to enforce its laws as it would be by an action directly against the state. This view of the case, in our judgment, is amply sustained by the cases above cited, and by the later case of Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, in which the subject is fully discussed by Mr. Justice Harlan. In so far as this action seeks an injunction against the respondent from proceeding to

enforce by prosecution the provisions of the statutes of Ohio above cited, the courts of the United States are deprived of jurisdiction by the eleventh amendment to the constitution.

We are now dealing with an officer of a state proceeding under a valid law of the state, and whose error lies in wrongfully construing the statute so as to include the complainant's product. To entertain the bill in this aspect would be to subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of offenses where it would have no jurisdiction to punish the parties if found guilty. It would be the extension of equity jurisdiction to cases where prosecutions in state courts by the state officers are sought to be enjoined, with a view to determining whether they shall be allowed to proceed under valid statutes in the courts of law. We think this an enlargement of the jurisdiction opposed to reason and authority. It is claimed, however, that conceding that a court of equity cannot enjoin the prosecution of criminal offenses, as a general thing, the rule is different when property rights are involved; and we are cited to cases holding that equity has jurisdiction to enjoin acts likely to be destructive of property rights, although the acts complained of constitute infractions of the criminal law. This is quite a different proposition from enjoining criminal proceedings alleged to be indirectly destructive of property rights. Many criminal prosecutions may affect the property of the person accused. A property may be greatly injured by the wrongful and unfounded charge that it is used for immoral purposes. Such prosecution may destroy its rental value and prevent its sale, yet a court of equity could not usurp the right of trial which both the state and the accused have in a common-law court before a jury. Every citizen must submit to such accusations, if lawfully made, looking to the vindication of an acquittal and such remedies as the law affords for the recovery of damages. It is often a great hardship to be wrongfully accused of crime, but it is one of the hardships which may result in the execution of the law, against which courts of equity are powerless to relieve  Suess v. Noble (C. C.) 31 Fed. 855; Hemsley v. Myers (C. C.) 45 Fed. 283; Kramer v. Board, 53 N. Y. Super. Ct. 492, Food Co. v. McNeal, 1 Ohio N. P. 266.

It is further claimed that the act is unconstitutional as an interference with the right of congress to regulate interstate commerce; and we are cited to Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49, in which a law of that state was held invalid to the extent that it prohibited the introduction of oleomargarine into the state from another state in original packages. The case was distinguished from the prior case of Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154, 39 L. Ed. 223, in which the supreme court upheld a statute punishing the sale of oleomargarine when colored in imitation of butter. In other words, the supreme court held it to be within the power of the state to require an article of food to be sold for what it really is, and to protect the public from imposition in buying one article of food in the belief that it is another, but beyond the power of the state to prohibit the introduction and sale in original packages of a pure article sold upon its merits. As we read the Ohio Stat-

ute, it does not undertake to prohibit the introduction and sale of a pure article of food, sold for what it really is, but the coloring, coating, or polishing of an article, whereby damage or inferiority is concealed; the act providing in this connection that it shall not apply to mixtures or compounds recognized as ordinary articles of food, if every package sold or offered for sale be distinctly labeled as a mixture or compound, with the name and per cent. of each ingredient therein, and is not injurious to health. The enactment of such a law is clearly within the police powers of the state, upon the principles enunciated in the case of Plumley v. Massachusetts, supra, for the protection of purchasers of food from imposition by the concealment of damage or inferiority in food. As in the Oleomargarine Case, the article is thus required to be sold for what it really is, without misleading the purchaser to buy it for what it is not. In the Plumley Case, Mr. Justice Harlan, speaking for the court, said:

"If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate. which it ought not to be supposed was intended to be surrendered to the general government, it is the protection of the people against fraud and deception in the sale of food products. Such legislation may, indeed, indirectly or incidentally affect trade in such products transported from one state to another state. But that circumstance does not show that laws of the character alluded to are inconsistent with the power of congress to regulate commerce among the states."

But it is argued that coffee treated so as to make Ariosa is a pure article of food, and a compound labeled as required by the statute. Again, the act is argued to be unconstitutional because of the construction put upon it by the food commissioner, and this "construction" is his contention that Ariosa is coffee so coated as to conceal damage or inferiority, and that it is not a compound or mixture within the meaning of the statute. These are the very questions the decision of which the statute vests in the discretion of the commissioner, as a preliminary matter, in determining to institute prosecutions in the enforcement of the law which he is charged to execute, leaving the guilt or innocence of the party charged to be decided by the proper tribunals when prosecutions are instituted under the law. The constitutionality of the act is to be determined by its language and purpose, and not by the alleged wrongful institution of prosecutions thereunder against those guiltless of a violation of its provisions. There are cases, as insisted by the learned counsel for the complainant, where the operation of a statute constitutional in itself, as administered by the state authorities, may deprive the citizens of rights secured by the constitution of the United States, where a federal court will interfere by injunction to secure to persons aggrieved the benefits of the federal constitution; but they are not cases where a court of equity must draw to itself the administration of the criminal law of a state, sought to be enforced by the officers of the state, and thus determine whether crimes may be prosecuted under valid enactments, because a party may be able to satisfy the court that he is in fact innocent of the charge. Such a construction of the powers of a court of equity would result in a confusion of jurisdiction, and an embarrassment of the ordinary processes of the law without precedent. If this bill can be entertained, it remits to the federal courts the supervision of the pure-food laws of the states, and

their dockets will be crowded with cases of those claiming that their particular articles of food and drink are not within the terms of the law.

Nor do we think that there is ground for injunction in the allegations of the bill that the food commissioner is publishing the fact that the product of the complainant is within the prohibition of the law. If this publication is made to those dealing in the article, it would be within the duty of the commissioner, in advising of contemplated prosecutions. If such publications are libelous, the law affords other means of redress. Francis v. Flinn, 118 U. S. 385, 6 Sup. Ct. 1148, 30 L. Ed. 165.

The fact that complainants produced Ariosa under a process protected by letters patent of the United States does not prevent it from coming within the operation of laws passed in the exercise of the police power of the state. The enactment of laws for the protection of health and to prevent imposition in the sale of food products is within this power, and the fact that the process by which it is made is protected by a patent, while it may prevent others from using it during the life of the patent, does not deprive the state of this power of regulation for the general good. Patterson v. Kentucky, 97 U. S. 501, 24 L. Ed. 1115; Palmer v. State, 39 Ohio St. 236, 48 Am. Rep. 429.

The fact that complainants' product is widely sold in Ohio, and many persons may be subject to prosecution, does not enlarge the jurisdiction of a court of equity to interfere by injunction to control prosecutions for alleged violation of the laws of the state.

We think this case comes within the principles settled by the supreme court in the cases above cited, and the circuit court did not err in dismissing the bill.