**HILL, Warden, v. UNITED STATES ex rel. WEINER.**

No. 5895.

Circuit Court of Appeals, Third Circuit.

Jan. 8, 1936.

On Rehearing June 8, 1936.

Walter L. Rice, Sp. Asst. to the Atty. Gen., John Dickinson, Asst. Atty. Gen., Wendell Berge, Sp. Asst. to the Atty. Gen., and Herman Reich, Asst. U. S. Atty., of Sunbury, Pa., for appellant.

Morgan S. Kaufman, of Scranton, Pa., and Julius I. Puente, of New York City, for appellee.

Before DAVIS and THOMPSON, Circuit Judges, and WATSON, District Judge.

DAVIS, Circuit Judge.

This is an appeal from an order of the district court discharging Joseph Weiner from the United States Northeastern Penitentiary on the ground that the United District Court for the Southern District of New York had no power to sentence him upon conviction for criminal contempt for a longer period than six months. He was sentenced upon his conviction by the New York court to serve two years in the penitentiary for having violated a decree entered in an equity proceeding brought by the United States under the Sherman Anti-Trust Act (15 U.S.C.A. §§ 1, 2, 3).

The decree which Weiner was charged with violating, filed February 4, 1932, enjoined him and others:

"8. (b) from attempting to create, or creating in the poultry industry of the Metropolitan Area or in the minds of any persons engaged therein, a feeling of fear and terror for the purpose of preventing said persons from buying, selling, or distributing live poultry in a free, open and competitive market;

"(c) from detaining, destroying, or damaging vehicles, or other equipment used in conveying live poultry within, into, or through the State of New York, to or from marketmen, retail dealers, butchers, or receivers;

"(d) from refusing, or instigating refusals, to load, unload, convey, deliver, slaughter, or handle poultry for any receiv-

er, marketman, retail dealer, or butcher, wherever the rendition of such service under reasonable conditions shall be requested and the one requesting the service shall pay, or offer and be ready, able and willing to pay or cause to be paid, therefor the fair and reasonable value thereof; * * *

"(g) from causing or coercing any marketman to employ laborers in excess of his reasonable requirements, whether such coercion is effected under the guise of labor union regulations or otherwise;

"(h) from following or spying upon marketmen, retail dealers, or butchers, or their representatives, employees, or truck drivers for the purpose of ascertaining the source of their poultry supplies, or intimidating them; * * *

"(k) from restraining the freedom of any marketman, receiver, retail dealer, or butcher in any way in purchasing, loading, unloading, trucking, conveying, delivering, slaughtering, selling, or competing in the purchase and/or sale of poultry;

"(l) from using any of the offices or positions in Local 167 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America, or in the Official Orthodox Poultry Slaughterers of America, Inc., or in similar organizations, for the purpose of coercing marketmen to buy poultry, poultry feed, or other commodities necessary to the poultry business, from any particular sellers thereof."

The information charging Weiner with criminal contempt was filed on July 31, 1933. On the return of the rule to show cause, he was adjudged guilty of contempt of coercing marketmen to buy feed from the Metropolitan Poultry Feed Corporation, of causing marketmen to employ laborers in excess of their reasonable requirements, and of spying upon marketmen for the purpose of compelling them to buy Metropolitan's feed in violation of the decree of the court. For these offenses he was sentenced to serve six months in the detention headquarters.

He was also adjudged guilty of contempt for visiting a poultry market on December 21, 1932, and threatening the proprietor and ordering him to rent poultry coops from the New Jersey Coop Company, for compelling marketmen to buy merchandise from particular sellers, and to employ an excessive number of laborers in violation of the decree.

He was sentenced to serve two years in the penitentiary for these offenses. The sentences were to run consecutively.

Upon application, the court modified the six months' sentence by increasing it to a year and a day to be served in the penitentiary concurrently with the two-year sentence, so that Weiner was to serve two years in the penitentiary, instead of two years in the penitentiary and six months in the detention headquarters.

He was committed to the Northeastern Penitentiary June 5, 1934. On May 7, 1935, he filed a petition for a writ of habeas corpus on the ground that the court had no power to sentence him for a period longer than six months, and that having served that period he was entitled to be discharged.

The determination of the question depends upon the act under which Weiner was sentenced. The appellant contends that he was sentenced under section 268 of the Judicial Code (28 U.S.C.A. § 385), which provides that: "The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

Manifestly, if he was sentenced under this section, the sentence was proper and legal.

Weiner, on the contrary, contends that he was sentenced under sections 21 and 22 of the Clayton Act (28 U.S.C.A. §§ 386, 387), which read as follows:

Section 21. "Any person who shall willfully disobey any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia by doing any act or thing therein, or thereby forbidden to be done by him, if the act or thing so done by him be of such character as to constitute also a criminal offense un-

der any statute of the United States or under the laws of any State in which the act was committed shall be proceeded against for his said contempt as hereinafter provided." 28 U.S.C.A. § 386.

Section 22. "In all cases within the purview of this Act such trial may be by the court, or, upon demand of the accused, by a jury. * * *

"If the accused be found guilty, judgment shall be entered accordingly, prescribing the punishment, either by fine or imprisonment, or both, in the discretion of the court. Such fine shall be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct, but in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $1,000, nor shall such imprisonment exceed the term of six months." 28 U.S.C.A. § 387.

If he was sentenced under section 22 of the Clayton Act, the sentence was illegal, for six months is the limit to which he may be sentenced under this section.

In order to interpret section 22 (28 U. S.C.A. § 387), it is necessary to consider sections 21 and 24 of the Clayton Act (28 U.S.C.A. §§ 386, 389).

Under section 21, if the act or thing done, which violates the decree, is of such character as also to constitute a criminal offense, it may be proceeded against as provided in section 22 of the act; that is, by the court without a jury or by a jury if the accused demands it.

Did the acts or things done by Weiner constitute a criminal offense?

In the criminal information filed against him and others, it was charged that they "were engaged in a combination and conspiring to restrain and monopolize, that they were attempting to monopolize, and that they had monopolized interstate trade and commerce in live and freshly slaughtered poultry in violation of the Act of Congress of July 2, 1890, entitled 'An Act To regulate trade and commerce against unlawful restraints and monopolies,' commonly known as the Sherman Anti-Trust Act by the means and methods set forth in said amended petition."

These were the things which Weiner and others were convicted for doing. The injunction, in substance, enjoined them from doing the same things again. In violating the injunction, they at the same time committed new and independent offenses in addition to violating the decree, in the trial for which they might have demanded a jury.

Section 24 provides that: "Nothing contained in sections 386 to 388 and 390 of this title [Sections 21 to 23 and 25 of the Clayton Act] shall be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced within section 386 of this title, may be punished in conformity to the usages at law and in equity prevailing on October 15, 1914" (28 U.S.C.A. § 389).

██ In other words, this section contemplates that the contempts which may be proceeded against under section 268 of the Judicial Code in which a jury could not be had by the accused on October 15, 1914, when the Clayton Act (38 Stat. 730) was passed, must still be prosecuted under that section. The Clayton Act intended to leave the jurisdiction and procedure prevailing under section 268 of the Judicial Code undisturbed, but the Clayton Act enlarged the jurisdiction of the court and conferred upon it sitting in equity authority to enjoin contemplated criminal offenses, Arbuckle v. Blackburn, 113 F. 616, 623, 65 L.R.A. 864 (C.C.A.6), and provided a new procedure in contempt cases for the violation of its decrees. This new procedure is applicable when it concerns acts constituting contempt which are also criminal offenses under the laws of the United States or the state where committed. Bowles v. United States, 50 F.(2d) 848, 851 (C.C.A.4), certiorari denied 284 U.S. 648, 52 S.Ct. 29, 76 L.Ed. 550.

██ The proceeding here came squarely within the provisions of the Clayton Act. It arose out of proceedings in equity which resulted in a final decree enjoining the defendant from the commission of criminal offenses under the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq. The acts violating the decree also constituted independent criminal offenses. Weiner could have demanded a jury trial, and this was recognized by the learned trial judge of the New

York court who took the precaution to require him expressly to waive a jury.

■ It has been urged from matters extraneous the record that a jury was waived because of a suggestion that the procedure was controlled by section 11 of the Norris Anti-Injunction Act of March 23, 1932 (29 U.S.C.A. § 111), but whatever the purpose prompting the waiver might have been, the Norris Act had no application because the case did not relate to any controversy between employers and employees or to labor disputes with which the act deals.

It has been further urged that this contempt proceeding could not have been under sections 21 and 22 for the reason that it was prosecuted in the name of the United States, and section 24 provides that nothing contained in sections 21 to 23 shall be construed to relate to contempts committed in disobedience of any lawful decree entered in any suit brought or prosecuted in the name of the United States. But section 24 excepts from the purview of that section cases embraced within section 21. The cases embraced within that section may be prosecuted in the name of the United States and the case against Weiner was specifically embraced within that section. This being true, the period of imprisonment for the contempt could not exceed the term of six months, and the learned judge fell into error when he imposed a sentence of imprisonment of two years. When Weiner had served imprisonment for a term of six months for the contempt, he was entitled to his discharge for the contempt which he had committed.

The order appealed from is affirmed.

THOMPSON, Circuit Judge, dissents.

## On Rehearing.

DAVIS, Circuit Judge.

This case is here on rehearing, and the single question before us is whether or not the second prosecution of the appellant was under section 268 of the Judicial Code (28 U.S.C.A. § 385) or under section 22 of the Clayton Act (28 U.S.C.A. § 387). We held that it was under section 22 of the Clayton Act. We think that our conclusion was correct and briefly restate our reasons therefor.

When the Clayton Act was passed on October 15, 1914, the courts of the United States had power under section 268 of the Judicial Code to punish by fine or imprisonment contempts of their authority, but such power under this section, under which the warden says the appellee was tried, did not "extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree or command of the said courts."

The Clayton Act conferred upon the courts a new jurisdiction in contempt cases. Section 21 (28 U.S.C.A. § 386) of the act provides that "any person who shall willfully disobey any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia by doing any act or thing therein, or thereby forbidden to be done by him, if the act or thing so done by him be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed shall be proceeded against for his said contempt as hereinafter provided," particularly in section 22.

■ This section provides that the trial of the accused for contempt within the purview of section 21 "may be by the court, or, upon demand of the accused, by a jury; * * * and such trial shall conform, as near as may be, to the practice in criminal cases prosecuted by indictment or upon information." If the accused be found guilty, he may be punished by fine or imprisonment, or both, in the discretion of the court, but the imprisonment shall not "exceed the term of six months."

If, in violating the decree of the court, a person also in and by the same act commits a criminal offense as defined in section 21, he must be prosecuted for his contempt under section 22 and allowed a jury trial. While the act provides that the trial "may be * * * by a jury," this provision is not merely permissive, but is really mandatory. Michaelson v. United States, 266 U.S. 42, 45, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451.

Section 24 of the act (28 U.S.C.A. § 389) defines the specific kind of contempt which must be tried under section 22. It provides that nothing contained in sections 21, 22, 23, and 25 of

the act (28 U.S.C.A. §§ 386–388, 390) "shall be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt *not specifically embraced within section 386 of this title (section 21 of the Clayton Act),* [italicizing is ours] may be punished in conformity to the usages at law and in equity prevailing on October 15, 1914," when the Clayton Act was passed.

In passing section 21 of that act, Congress did not intend to repeal section 268 of the Judicial Code, or to cover the same ground which that section covers. It was careful to keep away from the jurisdiction covered by that section. It merely intended to give the courts additional power in contempt cases. Before the Clayton Act was passed, federal courts sitting in equity did not have the power to punish for contempt a violation of their decree when the violation also constituted an independent criminal offense.

Contempt is specifically embraced within section 21 of the Clayton Act, so that it must be prosecuted under section 22 of the act and not under section 268 of the Judicial Code, when an order or decree of the court is violated and the violation at the same time constitutes an independent criminal offense. When these two things take place in one and the same act, then the contemner must be prosecuted under section 22 of the act, whether or not the decree was entered in a suit or action brought or prosecuted in the name of, or on behalf of, the United States, or by private parties. The antecedents of the word "same" in section 24, in the sentence beginning with the words, "but the *same,* and all other cases of contempt," etc., are not only the contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice, but also contempts committed in disobedience of any lawful writ, process, order, or decree entered in any suit or action brought or prosecuted in the . name of, or on behalf of, the United States, and all other cases of contempt not embraced in section 21.

In other words, these antecedent types of contempts, whether by private parties or the government, must be prosecuted under the law as it was when the Clayton Act was passed, but those contempts; which are specifically embraced within section 21 of the Clayton Act, must be prosecuted under section 22 of the act in which the contemner may demand a jury trial. That is, all kinds of contempt, with one exception, must be tried as they were on October 15, 1914, and that is by the court without a jury. That one exception is created and defined by sections 21, 22, and 24 of the Clayton Act, and there is a good reason for the exception: A person may not be tried and convicted for the commission of a crime, even though the crime involves the violation of the decree of a court, without the right of trial by jury. This right the Constitution gives him (Const. art. 3, § 2).

The case at bar is specifically embraced within section 21 ' of the act because the contemner violated the decree of the court and committed an independent criminal offense in one and the same act or deed. The thing which he did, and for which he was tried, convicted, and punished in the first trial, is the same thing for which he was tried, convicted, and punished in the second trial. The criminal offense which he committed in the first trial was the violation of the anti-trust laws. He was enjoined from committing the offense again. In doing the same thing again, he admittedly violated the decree of the court, and at the same time committed an independent criminal offense, for if the thing done the second time was not criminal, neither was it the first time. No one contends that Weiner did not commit a criminal offense the first time. Consequently the offense was criminal when committed the second time. His contempt was therefore specifically embraced within section 21 of the act, and he could not be tried under section 268 of the Judicial Code, but had to be tried under section 22 of the Clayton Act. He waived a jury trial, as he could do, and was proceeded against under this section of the act by the court without a jury. Upon conviction he could not be imprisoned for a term exceeding six months, and having served that term, he was entitled to his liberty.

The judgment of the District Court is affirmed.