## C. A. WEED & CO. v. LOCKWOOD, U. S. Atty.

## UNITED STATES v. RELIABLE CREDIT CLOTHING CO., Inc.

(District Court. W. D. New York.  May 1, 1920.)

Eq. Nos. 285B, 286B, and 287B; Cr. No. 2065.

1. **War ⊂⟩4—Congress may prohibit unreasonable charges for necessaries.**

As the war must technically be regarded as continuing until demobilization is complete and the President has proclaimed an end of the war, Congress had power to prevent by appropriate legislation the evils of greed and profiteering by the enactment of Lever Act Oct. 22, 1919, § 2, amending Act Aug. 10, 1917, § 4, and making it unlawful to make any unjust or unreasonable rate or charge for necessaries.

2. **Constitutional law ⊂⟩48—Statutes presumed constitutional, unless clearly invalid.**

Every statute is presumed constitutional, and should not be declared unconstitutional, unless clearly so.

3. **Constitutional law ⊂⟩298(1)—Eminent domain ⊂⟩2(1)—War ⊂⟩4—Act regulating charges for necessaries valid.**

Lever Act Oct. 22, 1919, § 2, amending Act Aug. 10, 1917, § 4, and prohibiting unjust or unreasonable rates or charges for necessaries, having been passed as a war measure, does not violate Const. Amend. 5, prohibiting the taking of property for public use without just compensation or the taking of property without due process of law; the public having an interest in necessaries.

4. **War ⊂⟩4—"Necessaries," in statute regulating charges, includes food and clothing.**

Food and wearing apparel are properly defined as "necessaries," within Lever Act Oct. 22, 1919, § 2, amending Act Aug. 10, 1917, § 4, and prohibiting unjust or unreasonable charges for necessaries.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

5. **Criminal law ⊂⟩16—Lever Act, regulating charges for necessaries, not void for uncertainty.**

Lever Act Oct. 22, 1919, § 2, amending Act Aug. 10, 1917, § 4, and prohibiting unjust or unreasonable charges for necessaries, is not void for uncertainty, under Const. Amend. 6, providing that the accused in a criminal case shall have a right to be informed of the nature and cause of the accusation.

6. **War ⊂⟩4—Under statute regulating charges for necessaries, President need not fix prices.**

Under Lever Act Oct. 22, 1919, § 1, authorizing the President to make regulations and issue orders essential effectively to carry out the provisions of that act and section 2, prohibiting unjust and unreasonable charges for necessaries, it is not a prerequisite to the violation of section 2 by charging unreasonable prices for clothing that the President should have fixed a fair price for clothing.

7. **Injunction ⊂⟩105(1)—Criminal prosecutions only enjoined when statute is unconstitutional.**

The district attorney will not be restrained from enforcing a federal statute by criminal prosecutions, except when the statute is unconstitutional.

In Equity.  Three bills by C. A. Weed & Co., by the Sultzbach Clothing Company, Incorporated, and by the Antwerp Diamond Com-

⊂⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pany, Incorporated, against Stephen T. Lockwood, as United States Attorney for the Western District of New York, with criminal prosecution by the United States against the Reliable Credit Clothing Company, Incorporated. On motions in the equity suits for preliminary injunctions, and on demurrer to the indictment in the criminal case. Demurrer overruled, and motions denied.

Stephen T. Lockwood, U. S. Atty., of Buffalo, N. Y., and Carl Sherman, Asst. U. S. Atty., of Buffalo, N. Y.

Simon Fleischman, of Buffalo, N. Y. (Irving L. Fisk, Louis E. Desbecker and Edward L. Jellinek, all of Buffalo, N. Y., on the briefs), for C. A. Weed & Co.

Emil Rubenstein, of Buffalo, N. Y. (James O. Moore, of Buffalo, N. Y., of counsel), for Reliable Credit Clothing Co., Inc.

HAZEL, District Judge. Indictments have been returned at this term of court against the above-named complainants, alleging violations of section 2 of the Lever Act as amended October 22, 1919 (41 Stat. 297, c. 80), and separate suits in equity were thereafter brought by certain of the defendants to enjoin the United States attorney from proceeding in the criminal actions pending final hearing. A rule to show cause was granted, which has now been heard; the government appearing and contending for a dismissal of the bill and opposing any stay.

In United States v. Reliable Credit Clothing Company, Incorporated, the defendant has demurred to the indictment. These four cases, involving substantially the same questions as to the validity of the indictment, have been heard together, and a single opinion covering them will suffice.

Section 2 of the Lever Act, which is an amendment of section 4 of the original Act of August 10, 1917, makes it unlawful for "any person willfully * * * to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," and the contention of the defendants, who are dealers in wearing apparel, is in the main that this provision of the act is unconstitutional; that it takes property for public use without just compensation, in violation of the Fifth Amendment of the Constitution of the United States; that the indictment is vague and indefinite, and accordingly repugnant to the Sixth Amendment; and, finally, that the President has not fixed a standard of prices to be charged for the articles. These objections are of vital importance.

[1] When the original bill was debated in Congress, it was designated, as an "emergency war measure," and inasmuch as it has been decided in Hamilton v. Kentucky Distilling Co., 251 U. S. 160, 40 Sup. Ct. 106, 64 L. Ed. ——, that the war must technically be regarded as continuing until demobilization is complete, and until the President has proclaimed an end of the war, the power of Congress to prevent by appropriate legislation the evils of greed and profiteering, specified in the indictment, must be upheld.

[2, 3] It is a general rule that every statute is presumed to have been passed under the sanction of constitutional authority, and its unconstitutionality should not be declared unless it is clearly so. If there is doubt in the mind of the court, the expressed will of the Legislature should be sustained. From my examination of the decisions to which attention was drawn in argument I conclude that the provision in question was a constitutional enactment, and was and is a valid exercise of legislative power. It is not repugnant to the Fifth Amendment, since, in my opinion, it imposes no greater limitations than does the Fourteenth Amendment upon state power. Hence it follows that, if a state has the legal right to impose restrictions upon dealers in necessaries under the police power, then concededly a like restriction may be enacted by the national Congress during time of war.

Defendants earnestly contend that the states cannot regulate prices of necessaries, under the Fourteenth Amendment, in times of peace or in times of war or public peril, and indeed there are decisions, Milligan, Ex parte, 4 Wall. 2, 18 L. Ed. 281, and U. S. v. Freight Association, 166 U. S. 319, 17 Sup. Ct. 540, 41 L. Ed. 1007, for example wherein language is used apparently upholding this view. But, conceding that Congress is "subject to applicable constitutional limitations," it has nevertheless been decided by the Supreme Court, in Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, that a state has power to regulate the conduct of its citizens toward each other, and, whenever necessary for the public welfare, it may determine how property in which the public has an interest may be used. It is true the Supreme Court dealt, in the Munn Case, with a warehouse used for storing grain, regarding which the General Assembly of Illinois had enacted a statute providing, among other things, for elevating rates and charges. It was asserted that the statute was void under the Fourteenth Amendment of the national Constitution, but the Supreme Court affirmed the constitutionality of the act passed by the state assembly, and it was firmly held that, whenever the owner of property devotes the same to a use in which the public is interested, he practically grants to the public an interest in such use, and to the extent of that interest he must submit to be controlled by the public for the common good, as long as he maintains the use. The learned court pointed out that it has always been customary—

"to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, etc., and in so doing to fix a maximum of charge to be made for services rendered, accommodations furnished, and articles sold."

In Budd v. N. Y., 143 U. S. 550, 12 Sup. Ct. 468, 36 L. Ed. 247, the Supreme Court strictly adhered to the doctrine enunciated in the Munn Case, and warehousing was regarded as devoting private property to a public use in the same sense, the learned court said, as did a common carrier, miller, ferryman, innkeeper, wharfinger, baker, cartman, or hackney coachman. In Dueber Watch-Case Manufacturing Co. v. E. Howard Watch & Clock Co., 66 Fed. 637, 14 C. C. A. 14, Judge Lacombe referred to the Munn Case, saying:

"An individual manufacturer or trader may surely buy from or sell to whom he pleases, and may equally refuse to buy from or sell to any one with whom he thinks it will promote his business interests to refuse to trade. That is entirely a matter of his private concern, with which governmental paternalism has not as yet sought to interfere, except when the property he owns is 'devoted to a use in which the public has an interest'; and such public interest in the use has as yet been found to exist only in staple commodities of prime necessity."

[4] It cannot be doubted that food and wearing apparel are properly defined as necessaries in which the public has an interest. Indeed, such I think was the view of Congress in the use of the word "necessaries." The Lever Act does not deprive any one of his property without due process 'of law, it merely limiting the rate or charge for dealing in or with any necessaries. For the foregoing reasons I am of the opinion that this court ought not to declare unconstitutional the provision to which exception is taken by defendants.

[5] A more serious question, to my mind, is presented by the objection that the provision is void for uncertainty. Its indefiniteness was recognized in the debate of the Senate, and Senator Hoke Smith directed attention to Tozer v. U. S. (C. C.) 52 Fed. 917, a case much relied upon by the defendants, wherein Justice Brewer, then Circuit Judge, broadly held that under the undue preference clause of the Interstate Commerce Act, a conviction for its violation could not be sustained for the criminality of the act was made to depend upon whether the jury thought a preference reasonable or unreasonable. The enactment in its present form nevertheless was passed by Congress, and presumably Congress intentionally used the words ."unjust or unreasonable rate or charge" without qualification or the inclusion of a maximum price or standard, to the end that there be a determination by the jury as to whether a rate or charge exacted for a necessary was unjust or unreasonable, in view of existing economic conditions. In determining such question it is essential to consider all the facts and circumstances, whatever they may be, relating to the exacted rate or charge.

There is merit in this contention by the government. In Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 29 Sup. Ct. 220, 53 L. Ed. 417, the Supreme Court had before it the anti-trust statute of Texas, which included the words "reasonably calculated to fix and regulate prices," and the court said the phrase "reasonably calculated" merely implied the commission of an act which tended to accomplish the prohibited thing. It was there urged that the statute was void for uncertainty, but the court was of opinion that the broad power was not given by the statute to a jury "to determine the criminal character of the act in accordance with their belief as to whether it is reasonable or unreasonable." The decision, true enough, left it doubtful as to the right of a jury in a criminal case to determine the reasonableness of a charge or rate; but in Nash v. U. S., 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232, which was a criminal case, this doubt was seemingly quieted. It was urged in that case that the statute was vague and indefinite, but Mr. Justice Holmes said:

"But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances, where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. * * * 'A criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East, P. C. 262."

Defendants contend, however, that this decision was based on the authority of the Waters-Pierce Oil Co. Case, and that it has no application to a determination by a jury as to the unreasonableness of a rate or charge for a commodity since the provision under consideration has no standard or guide for a merchant making a charge or rate, and his criminality ought not to depend upon a mere belief of the jury. It is pointed out that in the Standard Oil Case, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, and the Tobacco Case, 221 U. S. 106, 31 Sup. Ct. 632, 55 L. Ed. 663, the Supreme Court held that there must be a standard involved in the law to determine violations of the Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830), and that in such cases the rule of reason fixed by the common law was applied as a standard. In the Nash Case, however, consideration was given to this question, as the excerpt quoted above would seem to show. In International Harvester Co. v. Kentucky, 234 U. S. 216, 34 Sup. Ct. 853, 58 L. Ed. 1284, the Supreme Court reversed the state court, because the state statute offered no standard of conduct by which it was possible to understand in advance whether the price restriction in that case was violated or not. This decision was deemed consistent with the Nash Case, because, as stated in the opinion, the court dealt "with the actual, not with an imaginary, condition other than the facts."

It is certainly a pertinent inquiry as to whether the case at bar falls within the category of the Nash or International Harvester Cases. I think the weight of authority justified me in holding that it comes within the former, for the reason that in a later case (Miller v. Strahl, 239 U. S. 426, 36 Sup. Ct. 147, 60 L. Ed. 364) the Supreme Court expressed the view that rules of conduct must necessarily be expressed in general terms, and depend upon varying circumstances. The case concerned a police statute, in which keepers of hotels were required to give notice to guests in case of fire, and it was held that such a statute was not void for uncertainty in not describing rules of conduct. See, also, Fox v. Washington, 236 U. S. 277, 35 Sup. Ct. 383, 59 L. Ed. 573, Omaechevarria v. Idaho, 246 U. S. 349, 38 Sup. Ct. 323, 62 L. Ed. 763, and Sears, Roebuck & Co. v. Federal Trade Commission, 258 Fed. 307, 169 C. C. A. 323, as bearing upon the asserted indefiniteness of the act. Candor compels the admission that the objection of uncertainty is not altogether free from doubt, and I am in agreement with Judge Rudkin in U. S. v. Spokane Dry Goods Co. et al., 264 Fed. 209, wherein, in overruling a demurrer to a similar indictment, he said:

"The situation confronting Congress was a difficult one at best. * * * To fix profits definitely and arbitrarily, without reference to place or circum-

stance, would prove unjust and oppressive in the extreme, for it is matter of common knowledge that what would be deemed just and reasonable in one place or as to one commodity would be unjust and unreasonable in another place or as to a different commodity. Congress was therefore compelled to choose between the course pursued and some other course equally difficult, and the wisdom of its choice cannot be made the subject of judicial inquiry."

It is therefore held that the indictments are not invalid for uncertainty.

[6] It is next objected that the indictment is void because the President had power to determine prices of necessaries, and omitted to do so; that it was a prerequisite to the violation of the act that he should specify a fair price for wearing apparel. But section 1, which authorizes the President to make regulations and to issue "such orders as are essential effectively to carry out the provisions of this act," does not, in my opinion, require that he fix the prices of wearing apparel or necessaries. By specific reference the President was empowered, in other sections of the Lever Act, to fix the price of wheat, coal, and coke, but not that of wearing apparel or food, and his failure to do so, perhaps because of its recognized futility, does not render the indictment invalid. The demurrer of the Reliable Credit Clothing Company, Incorporated, to the indictment is overruled.

[7] In Hoffmann Brewing Co. v. McElligott (D. C.) 259 Fed. 321, on appeal 259 Fed. 525, 170 C. C. A. 487, it was substantially held that an injunction can only be granted in a case against a district attorney to restrain the enforcement of a federal statute where it is unconstitutional. He may then be enjoined on the theory that the statute is nonexistent, and he acts without official authority. Since it is decided herein that the statute is constitutional and valid, it follows that the motions for interlocutory injunctions must be denied. The complainants, however, anticipating this decision, have expressed a desire to have the conclusions reached herein reviewed, and their right to a temporary injunction determined by the Circuit Court of Appeals. This court is quite willing that such a hearing be expedited, and, the government consenting, that the status quo be maintained until it can be ascertained whether the Circuit Court of Appeals, because of the importance of the case, will assign an early date for hearing.

Orders may accordingly be entered in conformity with the views expressed herein.