## P. E. HARRIS & CO. v. O'MALLEY et al.

First Division. Juneau. July 30, 1924.

No. 2410–A.

**1. Injunction 105(1)—To Restrain Prosecuting Officers.**

It is not ground for injunctive relief that the prosecuting officer has erroneously construed the statute on which the prosecution is based, so as to include the act or acts which it is the purpose of the prosecution to punish.

**2. Injunction 105(1)—Restraining Prosecuting Officers.**

The courts of equity have almost universally denied their jurisdiction to restrain prosecuting officers from enforcing the criminal laws, on the ground that the officer was acting erroneously. Such a practice would be to subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of offenses, where it would have no jurisdiction to punish the parties, if found guilty.

**3. Fish 13(2)—What Constitutes the Opening of a Trap During the Weekly Closed Season.**

Where the law requires that, during the weekly season fishing for salmon, the gate, mouth, or tunnel of all stationary or floating traps shall be closed and 25 feet of the webbing or net of the heart of such traps on each side next to the pot shall be lifted or lowered in such manner as to permit the free passage of salmon and other fish, *held*, that a section 25 feet in width of the body of the webbing or net of the heart walls of the trap adjoining the pot should be lifted or lowered, and that a V-shaped opening was not a compliance with the statute.

In this action the plaintiff seeks the intervention of a court of equity to restrain the defendants from enforcing a regulation issued by the Bureau of Fisheries under the Act of Congress of June 6, 1924 (48 USCA §§ 221–228, 232–234 [U. S. Comp. St. §§ 3622¼–3632]), entitled "An act for the protection of the fisheries of Alaska, and for other purposes."

See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The particular regulation objected to by the complainant is the regulation or instruction issued by the bureau to its employees under section 5 of the aforesaid act (48 USCA § 234 [U. S. Comp. St. § 3632]), which provides for a weekly closed season for fishing of salmon, and further provides that, throughout the weekly closed season herein prescribed, the gate, mouth, or tunnel of all stationary or floating traps shall be closed, and 25 feet of the webbing or net of the heart of such traps, on each side next to the pot,· shall be lifted or lowered in such manner as to permit the free passage of salmon and other fishes.

Under the latter clause of this section of the statute, the bureau issued the following instructions:

"2. In respect to the provision of law regarding heart walls, the Circuit Court of Appeals for the Ninth Circuit, in affirming the decision of the District Court of Alaska, First Judicial Division, in the case of Thlinket Packing Co. v. United States, 236 F. 109, held as follows:

" 'Section 5 plainly provides that 25 feet of the webbing or net of the heart of such traps on each side of the pot shall be lifted or lowered in such manner as to permit the free passage of salmon and other fishes. If the statute had said no more than that the webbing of the net shall be lifted or lowered in such manner as to permit the free passage of salmon, it might be held that the command would be complied with by lowering the net to make a V-shaped opening, provided that such an opening permitted the free passage of fish. But the statute enacts that 25 feet of the net shall be lifted or lowered, which plainly means that a section 25 feet in length of the body of the net shall be raised or lowered.'

"In the same decision the court also held as follows:

" 'But in statutes such as this, enacted for the protection of fish, it is the letter of the law rather than its spirit which all fishermen are called upon to obey. The fisherman is not allowed to offer a substitute or to adopt a means of protection which he thinks is just as good. If the legislative body makes no exception to a clear declaration of its will, the presumption is conclusive that it intended none.'

"In view of the foregoing decision, based upon a provision of law identical in language with that of the present law of June 6, 1924, and the announcement of October, 1923, by the judge of the District Court for the First Judicial Division of Alaska that the law would be enforced as construed by the courts and not as construed by any other agency, and that thereafter all persons convicted of violating the fisheries laws would be given substantial fines and possibly jail sentences, you are instructed to take proper legal action in all cases where the heart walls of traps are not opened in accordance with the law as above cited."

The plaintiff avers that the defendants construe the opinion of the Circuit Court of Appeals to mean that the webbing or net of the heart walls on each side thereof next to the pot for a distance of 25 feet shall be lifted or lowered from the top to the bottom of the trap during the closed season, and that this is not the proper construction of the section.

They further aver that, in the Thlinket Packing Co. Case above referred to, the manner of opening the heart walls was not directly before the courts; that the Court of Appeals was not in the case advised of the impossibility of compliance with such construction of the statute, nor was the manner of opening the heart walls directly passed upon by that court; that it is impossible, because of conditions of tide, currents, and obstructions, to so construct traps that 25 feet of webbing on each side of the heart walls may be opened from the top to the bottom of the trap; that for many years the manner of opening the heart walls in stationary traps has been by means of a shove-down, which consists of a spar attached by a hinge to a stationary pile at the intersection of the heart wall and the pot in such manner as to permit it to drop back, and be pulled back in place. To this shove-down the web is fastened in such manner that, when the shove-down is dropped back or pulled back to a pile, placed in the heart wall a distance of 25 feet from the pile to which the shove-down has been attached by the hinge, it leaves an opening in the webbing of the heart wall next to the pot, having a width of 25 feet at the top and narrowing down to a point at the position of the hinge. With floating traps, the method used by the trap owners was to lift or lower a section of the heart wall 25 feet in length next to the pot a distance of 6 feet. According to their claim, the opening so afforded permitted the free passage of salmon, which they aver do not swim more than 6 feet beneath the surface of the water. These methods, plaintiff avers, for many years prior to the decision of the Thlinket Packing Co. Case received the sanction of the Bureau of Fisheries, under the provisions of law contained in the Act of Congress approved June 26, 1906 (48 USCA §§ 230–242 [U. S. Comp. St. §§ 3628–3643]), entitled "An act for the protection and regulation of the fisheries of Alaska"; that after the Thlinket Packing Co. Case, and up to the 6th day of June, 1924, such methods of opening and closing the heart wall were sanctioned and

approved by the Bureau of Fisheries; that the construction
of the Act of June 6, 1924, imputed to the defendants would
destroy the valuable fishing industry, prevent the use of traps
for fishing in many localities, and irreparably injure the prop-
erty rights of plaintiffs, by rendering valueless the large and
valuable property invested in commercial fishing in the terri-
tory.

The complaint is very voluminous. It sets forth the above-
mentioned matters relative to the several instructions and reg-
ulations of the Bureau of Fisheries and other matters affecting
more or less directly the claim of plaintiff for relief. At the
hearing for the temporary injunction, there were submitted in
support of the complaint a large number of affidavits of trap-
owners and cannery employees to the effect that it was impos-
sible to open the heart wall so as to leave a rectangular open-
ing 25 feet in width and extending to the bottom of the trap,
as was alleged in the complaint to be contended for by the de-
fendants.

The defendants Shoup, Beaumont, and Ball appeared at the
hearing and resisted the motion for a temporary injunction,
setting forth in the written motion why a temporary restrain-
ing order should not be granted, as follows: First, because the
construction placed upon the statute in question by the Ninth
Circuit Court of Appeals is the same construction placed on a
statute identical in wording by the defendant officers; second,
that it is not impossible for plaintiffs to comply with the law
as they allege; third, because Congress, in especially re-enact-
ing the statute in question on June 6, 1924, adopted the con-
struction of the Circuit Court of Appeals; and, fourth, be-
cause the court has no jurisdiction to grant temporary relief
to restrain the enforcement of a valid criminal statute.

With such showing was submitted the affidavit of E. M.
Ball, assistant commissioner of fisheries, setting forth that he
is informed and believes that fish traps have been constructed
in Alaska, the heart walls of which have been opened during
the weekly closed season in the manner provided for in the
order of the Commissioner of Fisheries of June 6, 1924, and
submitting in corroboration of his statement several letters
from cannery superintendents, stating how they were attempt-
ing to comply with the law. Mr. Ball testified that during the
year 1919 he inspected two stationary fish traps in operation by

the Copper River Packing Company in the territory of Alaska, which were constructed so as to be open during the weekly closed season by lowering 25 feet of the webbing or net of the heart walls of said fish traps on each side next to the pot in a manner similar to the lowering of a window sash, so as to permit the free passage of salmon and other fishes. He further states, in his opinion based on his experience and study of the habits of salmon for 12 years in the territory of Alaska, that the opening of fish traps for a depth of 6 feet only will not permit the free passage of salmon and other fishes, etc.

At the hearing, the law and the necessity for a temporary injunction were ably and elaborately argued on behalf of the complainant, and contra by the assistant United States attorney, representing the defendants Ball, Beaumont, and Shoup. At the conclusion of the hearing, I denied the motion for a temporary restraining order, giving my reasons orally, and, at the request of the attorney for the complainant stated that, as opportunity offered, I would submit in writing my reasons for such conclusion; hence this memorandum.

Hellenthal & Hellenthal, of Juneau, for plaintiff.
H. D. Stabler, Asst. U. S. Atty., of Juneau, for defendants.

REED, District Judge. It will be noted that the basis of the action is not the invalidity of the statute under which the action of the officers is complained of, but that the gravamen of the complaint is that the officers of the Bureau of Fisheries and the United States attorney have wrongly construed the section of the statute under consideration, by insisting that 25 feet of the net or webbing of the heart walls on each side thereof next to the pot shall be raised or lowered from the top to the bottom of the trap, in order that there may be free escapement of fish through the trap during the weekly closed season.

Considering that the prosecuting officers wrongly construe a valid criminal statute of the United States, *will that fact authorize a court of equity to issue an injunction to restrain them from prosecuting under the statute?*

I find no authority to support such a doctrine, but, on the contrary, the authorities seem to be that no injunction will lie against prosecuting officers of the government to restrain them from enforcing a constitutional criminal statute, even

though, in attempting to enforce it, such prosecuting officers have misconstrued its effect.

In 32 Corpus Juris, p. 281, the law is stated:

"It is not ground for injunctive relief that the prosecuting officer has erroneously construed the statute on which the prosecution is based, so as to include the act or acts which it is the purpose of the prosecution to punish."

In the case at bar, the complaint is that the prosecuting officers erroneously construe a valid statute, and threaten to prosecute the complainants for failure to comply with such constructions; i. e., that the prosecution is for noncompliance with the statute as erroneously construed by the prosecutor.

The proposition simply amounts to this: The complainants claim that the methods heretofore used by them in opening the heart walls of traps comply with the terms of the statute; the contention is made in the face of an adjudication interpreting the statute otherwise by the Circuit Court of Appeals; that the interpretation of the statute and of the adjudication thereof by the Circuit Court of Appeals and by the prosecuting officers is erroneous, and that, by not complying therewith, they are not committing a crime; and that therefore a court of equity has jurisdiction to restrain the prosecuting officers from enforcing the statute as interpreted by the Circuit Court of Appeals and by the prosecuting officers.

The courts of equity have almost universally denied such jurisdiction. See In re Sawyer, 124 U. S. 200, 211, 8 S. Ct. 482, 31 L. Ed. 402; Story, Equity Jurisprudence, par. 893; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Arbuckle v. Blackburn (C. C. A.) 113 F. 616, 65 L. R. A. 864.

As was said by Judge Day, afterwards a member of the Supreme Court, who denied an injunction sought on a similar ground in Arbuckle v. Blackburn, supra, to hold otherwise—

"would be to subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of offenses where it would have no jurisdiction to punish the parties if found guilty. It would be the extension of equity jurisdiction to cases where prosecutions in state courts by the state officers are sought to be enjoined, with a view to determining whether they shall be allowed to proceed under valid statutes in the courts of law. * * * Many criminal prosecutions may affect the property of the person accused. A property may be greatly injured

by the wrongful and unfounded charge that it is used for immoral purposes. Such prosecution may destroy its rental value and prevent its sale, yet a court of equity could not usurp the right of trial which both the state and the accused have in a common law court before a jury. Every citizen must submit to such accusations if lawfully made, looking to the vindication of an acquittal and such remedies as the law affords for the recovery of damages. It is often a great hardship to be wrongfully accused of crime, but it is one of the hardships which may result in the execution of the law, against which courts of equity are powerless to relieve."

In Jacob Hoffman Brewing Co. v. McElligott, 259 F. 525, the Circuit Court of Appeals denied an application for an injunction based upon an affirmation by the plaintiff that the defendant erroneously construed the war-time prohibition act, and was transcending his authority in attempting to enforce the same.

In modifying the opinion of Judge Hand (259 F. 321), who granted a temporary injunction against Casey, who was then United States attorney for the Southern district of New York, opinions were rendered by each of the Circuit Judges. Judges Ward and Rogers held, in effect, that a suit to enjoin the United States attorney was a suit against the United States, and that the United States could not be sued without its consent.

Judge Ward in the course of his opinion says (page 528):

"The sole ground upon which the United States attorney, defendant in this case, is charged with transcending his authority, is that he erroneously construes the statute in connection with the complainant's product, viz. as prohibiting the use of food products in the manufacture of any beer for beverage purposes after May 1, 1919, and the sale of such beer after June 30, 1919. * * * Although we concur in the construction of the statute by the court below, and assume that the United States attorney will institute criminal proceedings, we do not think the court had power to stay him by injunction from doing so. The proper place for determining whether such criminal proceedings are maintainable is not in a court of equity, but upon an indictment tried in a criminal court before a jury. For any error then committed there will be an adequate remedy by writ of error."

Judge Rogers, concurring in part, after exhaustively reviewing the decisions of the Supreme Court and other authorities, thus states the law (page 538):

"Does the fact that the prosecuting officer misconstrues a constitutional statute justify a court of equity in issuing an injunction to restrain him? I am not aware that the Supreme Court has so held. In the absence of such a ruling I think the doctrine announced by

the Circuit Court of Appeals in the sixth circuit should be followed. It was there said in Arbuckle v. Blackburn, 113 F. 623, 51 C. C. A. 129, 65 L. R. A. 864, that the jurisdiction of courts of equity had never been carried to that extent in authoritative decisions. 'On the contrary,' said Judge Day (afterwards Justice Day of the Supreme Court), 'the Supreme Court, in more than one instance, has denied such jurisdiction.' And he adds: 'We think this an enlargement of the jurisdiction opposed to reason and authority.' This opinion was concurred in by Judge Lurton, who also later became a member of the Supreme Court of the United States."

Judge Hough states in his opinion (page 542):

"In the result reached by Judge Ward I concur, and with the opinion I agree, except in so far as it bases the modification of injunction order on a lack of 'power to stay the United States attorney' from instituting any and every criminal proceeding under any constitutional statute. The matter is one of degree, not of kind or power. A prosecuting officer's threatened act may be so preposterously unlawful (though not unconstitutional) as to justify the intervention of equity."

This case was taken to the Supreme Court of the United States and the dismissal of the case was affirmed by that court. The Supreme Court based its decision solely on the constitutionality of the statute. See Ruppert, Inc., v. Caffey, 251 U. S. 264, 40 S. Ct. 141, 64 L. Ed. 260; also Scatena v. Caffey (D. C.) 260 F. 757; Amalgamated O. G. Corp. v. City of San Francisco (D. C.) 263 F. 617, 618; Weed v. Lockwood, U. S. Atty. (D. C.) 264 F. 453, 458; Id. (C. C. A.) 266 F. 787.

Based upon the authority of these cases, I am of the opinion that the motion for the temporary injunction should be denied, especially as to the United States attorney and his assistants, and as to E. M. Ball of the Bureau of Fisheries and his assistants, for the reason that I am not convinced that the construction placed upon the statute by the Bureau of Fisheries and the United States attorney is not correct.

I have carefully examined the records in the Thlinket Case, and am of the opinion that the question whether the method of opening the heart walls as claimed by complainant to be sufficient was directly before this court and the Circuit Court of Appeals. I am confident that the Circuit Court of Appeals and this court had the manner of opening the heart walls as contended for by the complainant directly before it; and I am convinced that the V-shaped opening was decided by the Circuit Court of Appeals not to be sufficient opening. The Circuit Court of Appeals uses this language:

"Error is assigned to the refusal of the court to grant certain requested instructions. The instructions which were refused differ in no material respect from the instructions given, except that the court refused to charge that the statute does not mean that 25 feet of the net must be lifted or lowered vertically, but that it is sufficient if 25 feet of the web is lifted or lowered in a V shape, and in such a manner as to permit the free passage of salmon and other fishes. In this connection, exception was taken also to the illustration used by the court in charging the jury, in which he compared the raising and lowering of the net as required by the statute to the raising and lowering of a window sash. We are not convinced that the construction given by the court to the language of the statute was erroneous. Section 5 plainly provides that 25 feet of the webbing or net of the heart of such traps on each side of the pot shall be lifted or lowered in such manner as to permit the free passage of salmon and other fishes. If the statute had said no more than that the webbing of the net shall be lifted or lowered in such manner as to permit the free passage of salmon, it might be held that the command would be complied with by lowering the net to make a V-shaped opening, provided that such an opening permitted the free passage of fish. But the statute enacts that the 25 feet of the net shall be lifted or lowered, which plainly means that a section 25 feet in length of the body of the net shall be raised or lowered. Such being the language of the statute, the court below did not err in denying the requested instructions or in using the illustration which is objected to."

The Circuit Court of Appeals held directly that a section 25 feet in width of the body of the webbing or net of the heart walls of the trap adjoining the pot should be lifted or lowered, and that a V-shaped opening, as contended by the complainant to be sufficient opening, was not in compliance with the statute. The court, however, did not specifically say to what distance vertically the section of 25 feet of the body of the net should be raised or lowered to permit the free passage of salmon and other fishes; nor does the complainant in his bill state to what distance the webbing of the heart wall shall be lifted or lowered, but contends that if 25 feet of the webbing be opened at the top and extend down into the water at less width, it would afford a free passage for salmon and other fishes.

Such construction of the statute is not correct, nor is it in accord with the decision of the Circuit Court of Appeals. It seems to me a reasonable construction of the statute must be given, having its purpose in view. The statute was enacted for the purpose of giving a free and unobstructed passageway through the heart wall of the trap for salmon and other fishes during the weekly closed period, and it was undoubtedly con-

sidered by Congress that an opening 25 feet in width was necessary for the free passage of the fish; and an opening 25 feet in width above the water level, and less than that width at the level, or below the level, would not comply with the intention of Congress or the construction of the statute by the courts.

Complainant in his bill, however, states that an opening in the heart walls of floating traps 25 feet in width and 6 feet in depth is sufficient to allow the free passage of salmon and other fishes; that salmon and other fishes which pass into traps swim at a depth of less than 6 feet from the surface; and he further states that an opening 1 foot in width in the heart walls would permit salmon and other fishes to pass out and escape from the trap with the same degree of certainty as an opening many feet in width.

If this statement of plaintiff is true, that salmon and other fishes which pass through traps swim at a less depth than 6 feet from the surface of the water,—what is the necessity for having the webbing or net of the leads and hearts of traps extend to the bottom of the sea, a distance of 80 to 100 feet in some cases? In may be said that salmon striking an obstruction, sound, and endeavor to find a passage at a greater depth. Then, if fish are obstructed by the heart walls, they would also sound; and so sounding, they would in all probability pass by or underneath the opening contended as sufficient by the complainant.

It seems to me that the statement of the complainant in this respect is not borne out by the facts. It is directly contradicted by the assistant commissioner of the Bureau of Fisheries, who has had 12 years' experience in determining the habits of salmon and other fishes in the waters of Alaska, and it does not accord with common sense.

That it is impossible to construct traps so that the opening of 25 feet in the heart walls shall extend to the bottom is also a questionable statement. The assistant commissioner of the Bureau of Fisheries, Mr. Ball, testified that in the year 1919 he visited traps so constructed. The present traps of complainant may not have been constructed so that it was possible to make an opening 25 feet in width from the top to the bottom of the heart walls, and this construction may have been acquiesced in by the Bureau of Fisheries, but that does not af-

ford any reason for construing the law so as to fit such cases. I am confident, however, that traps can be constructed so as to make the opening in the heart walls required by the statute; that it is neither impossible nor extremely difficult, though it may be less convenient than the method contended for by the complainant.

While at the present time I am not prepared to say that in all cases, in order to comply with the statute, that a section of the body of the webbing or net 25 feet in length of the heart walls next to the pot on either side shall be lifted or lowered, and that the opening thereby made shall extent to the bottom of the trap at the same width, I do believe that is and should be the proper construction of the statute. I base my belief on the declared purpose of the statute, the conservation of the fisheries of Alaska; that such construction of the statute would not only better accomplish that object, but that it is a reasonable construction of the statute, and the only reasonable construction. Moreover, it will give a standard to which trap fishermen must adhere.

There are other reasons which guide me in my decision to deny the temporary injunction; but, as this memorandum has been extended too far, I will not set them forth.

For the reasons stated, the motion for temporary injunction will be denied.